JOHN C. PHILLIPS AND OTHERS, RESPONDENTS, v. CORNELIUS A. WORTENDYKE, APPELLANT.

Corporation — liability of its president for false statements made to procure credit for it — an action will lie against him by the seller of the goods before the price is due from the corporation.

Where the president of a corporation, who has the management of its business affairs and knows that it is largely indebted and probably insolvent, makes statements as to its affairs, false in fact, for the purpose of obtaining credit on its behalf, he becomes personally liable for the consequences of the fraud he thus commits, and in an action brought by the person injured, to recover the damages he has sustained, an order for the arrest of the defendant may properly be granted.

Such an action may be brought before the indebtedness of the company for the goods purchased has matured.

APPEAL from an order of the Special Term denying a motion to vacate an order of arrest.

*John R. Dos Passos*, for the appellant.

*Carlisle Norwood, Jr.*, for the respondents.

DAVIS, P. J.:

The motion to vacate the order of arrest was made in this case solely upon the affidavits upon which the same was granted. In such a case the averments of fact contained in the affidavits, and the fair inferences to be drawn therefrom, must be deemed to be conceded as true for the purposes of the motion.

The defendant in this case was president of the Wortendyke Manufacturing Company, a corporation organized under the laws of New Jersey, and carrying on the business of manufacturing silk at Wortendyke, in that State. He managed and controlled the affairs of the corporation. Prior to January, 1883, the plaintiffs had had dealings with the Wortendyke Manufacturing Company; and about that time they requested one Banning, who was the agent of the company in the city of New York, to get a statement of its financial condition, and, soon after, Banning furnished to the plaintiffs such a statement. The statement so furnished showed the assets of the corporation to be, in value, $638,370.63; and its

liabilities, $198,000, leaving a surplus over and above liabilities of $440,370.63. It was signed by C. H. Draper, book-keeper of the company. This statement, if true, not only showed the company to be solvent, but abundantly able to pay all its debts and leave a large surplus. The evidence clearly shows that this statement was made out by and under the direction of the defendant, and that it was delivered to the plaintiffs by him, acting through the agent of the company; and that, relying upon that statement, the plaintiffs, in March and April following, sold and delivered to the Wortendyke Manufacturing Company, on three occasions, at agreed prices, quantities of raw silk, amounting in the aggregate to the sum of $16,983.35, the whole of which remains unpaid. The affidavits also show that the defendant, on the fifteenth of August, at a meeting of the creditors of the company, when shown a copy of the statement above mentioned, stated in substance that the original had been prepared under his instructions for the purpose of the company's credit; that he examined it before it was issued; that he sent a copy to Banning, and personally delivered a copy to the firm of Dix & Phyfe, note brokers in Wall street, New York, for the purpose of selling the company's commercial paper; and further said that items of liabilities, of which he had full knowledge, were omitted from such statement; that amongst those omitted were notes of said company amounting to between twenty and thirty thousand dollars, held by banks in New Jersey; that he did not think it worth while to include such notes, as the banks had been renewing them for more than ten years, and as the banks were willing to continue renewals the notes would not, therefore, trouble him; that there had been omitted liabilities amounting to $68,000 of advances made against merchandise and silk, which he had set out among the assets; and that other liabilities to a large amount were also omitted from such statement. The affidavits also showed that the company was largely indebted in an amount subsequently secured by executing a mortgage of its real estate in the sum of $150,000; and other facts tending to show that at the time the representations were made the company was, in fact, insolvent and its liabilities exceeded the actual value of its assets, and that the defendant knew those facts.

The court below held that in the absence of explanation on the

part of the defendant, the affidavits were sufficient to uphold the warrant. We are of the same opinion. It is true that the defendant was the president of a corporation and was acting on its behalf in obtaining credit, and that the silk was purchased for the use and benefit of the corporation. But there can be no doubt that where the president of a corporation, having knowledge and the management of its business affairs and knowing that it is largely indebted and probably insolvent, makes statements of its affairs false in fact for the purpose of obtaining credit on its behalf, he becomes personally liable for the consequences of the fraud he thus commits.

In this case the statement issued was grossly untrue and deceptive. It must have been known to be so to the defendant. It was intended to secure credit for the corporation and undoubtedly had that effect, and since the defendant furnishes no explanation or answer to the allegations it contained establishing this state of things, he must take the consequences of his wrongful act.

But it is insisted that the affidavits show that the indebtedness of the company, for the goods purchased, has not matured. That, we think, is not a material circumstance. It is well settled that whenever such a fraud is discovered by a creditor, he may at once repudiate the sales and sue for the value of the property fraudulently obtained, notwithstanding the period of credit has not expired; and if the creditor has been induced by the fraudulent representations of a third party, made on behalf of a corporation or other principal to make such a sale, the same rule of law authorizes an immediate action against the wrong-doer for the injury sustained. No relation of principal and surety grows out of such a transaction, which compels the creditor first to resort to the principal debtor, and to determine that a recovery cannot be had of him; because the sole basis of the cause of action in such a case is the wrongful act of the agent, which is a personal tort to it, for which the agent may be pursued alone.

We see no reason for interfering with the order of the court below, and the same is therefore affirmed, with ten dollars costs and disbursements.

DAVIS, P. J., and BRADY, J., concurred.

Order affirmed, with ten dollars costs and disbursements.